IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **WARREN GIDDINGS,** | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. DLB-22-2516 |
| **CENTURION BEHAVIORAL HEALTH STAFF,** *et al.*, | * | |
| | * | |
| Defendants. | * | |

**MEMORANDUM OPINION**

Self-represented plaintiff Warren Giddings, presently incarcerated at Jessup Correctional Institution ("JCI"), filed this civil rights action pursuant to 42 U.S.C. § 1983 against Centurion Behavioral Health Staff, Dr. Claudia Howard, M.D., Dr. Oludolapo Kale, M.D., Dr. Chase Butala, M.D., and Christina Mullins, R.N. (collectively, the "Centurion defendants"); the Maryland Department of Health Board of Professional Counselors and Therapists Staff and the Maryland Board of Nursing Staff (collectively, the "Boards"); Centurion Medical Director, Centurion Regional Director, "Psychologist Robinson," JCI Psychiatrist, JCI Psychology Staff, and JCI Psychologist/Therapist. ECF 1, 11. Giddings states that in May 2022, his psychiatric medication was discontinued, causing him depression, irrational thoughts, and mood swings. *Id.* at 2, 4. He alleges that the defendants ignored his requests to have the medication reinstated. He also alleges he was stripped of vocational training credits, good conduct credits, and his minimum classification status based on a false report and after a hearing for which his competency was not properly assessed. Against all defendants, he asserts claims of deliberate indifference to a serious

medical need, medical malpractice, and a due process violation. *Id.* at 2–7. Giddings seeks $10 million in damages as well as declaratory and injunctive relief. *Id.* at 3.[1]

None of the defendants has been served. The Centurion defendants received a copy of the complaint and agreed to respond without having been served. ECF 9, 14. They moved to dismiss the complaint or, in the alternative, for summary judgment. ECF 16. Giddings opposed the motion and moved for the Court to serve the Boards. ECF 8, 18. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2021). For the reasons set forth below, the Centurion defendants' motion, construed as one for summary judgment, is granted. Giddings' motion to serve the Boards is denied, and his claims against the Boards and the remaining defendants are dismissed pursuant to 28 U.S.C. § 1915A.

## I.     Background

In 2020, Giddings, who at the time was incarcerated at a state facility in Hagerstown, Maryland, was prescribed Lithium to treat his bipolar disorder. *See* ECF 16-4, at 2. On April 1, 2022, he complained about side effects to Tina Carder, R.N., and asked for a different medication. ECF 16-1, ¶ 5. She told him he had to wait for the results of pending lab tests to discuss treatment options. *Id.*

On April 11, 2022, Dr. Howard met with Giddings and discontinued the prescription in order to take "the safest course regarding his medication." ECF 16-4, at 7. At the time, Giddings showed no signs of mania, psychosis, chronic depression, or anxiety, and he denied homicidal or

---

[1] Giddings did not name the individual defendants in the caption of the complaint, but he referenced Dr. Howard, Mullins, and Robinson within his statement of claim and stated in his supplement that all defendants referenced in his complaint should be listed as defendants. ECF 1, 11. The defendants provided the names of Drs. Kale and Butula. Because Giddings stated he was "not sure" whether they were involved in the facts of this case and that he was "not entirely sure of the identity of all Centurion defendants, other than their job title," the Court treats all of the individuals named in the complaint and identified by the defendants as named defendants.

suicidal ideations.  ECF 16-4, at 7-11.  At that time, the bloodwork taken on March 30 showed Giddings had elevated ALT/AST levels, sodium below the normal limit, and was experiencing side-effects related to Lithium such as weight gain, increased thirst, and increased urination.  ECF 16-4, at 11, 33.  According to Dr. Howard, Giddings' weight gain put him at risk for Diabetes Mellitus and Metabolic Syndrome, both of which are precursors to cardiovascular disease.  ECF 16-2, ¶ 5.  Moreover, Giddings had developed hypothyroid disease while taking Lithium, and his kidneys were being adversely affected.  *Id.*  Dr. Howard was concerned that continuing the medication would cause "irreversible damage." *Id.*

Giddings requested sick visits on April 21, 25, and twice on April 26 because he felt that he needed to be on a mood stabilizer.  ECF 16-4, at 38-39.  On April 22, Mullins evaluated Giddings and noted that Giddings was concerned about the discontinuation of his Lithium.  ECF 16-4, at 35.  She told him that they needed to wait for lab results from bloodwork that was scheduled for May (four weeks after Lithium was discontinued) before restarting the medication or prescribing another one.  ECF 16-1, ¶ 8.  Giddings became verbally abusive and called her a "stupid roach" and a "bitch," and Mullins wrote a ticket against Giddings.  ECF 16-4, at 35.

Mullins saw Giddings again on April 26 and explained that "it is not the intent to withhold mental health services.  However, it *is* our intent to provide mental health services in a safe capacity, with the least amount of harm." *Id.* at 18 (emphasis in original).  She noted that illicit drug use could be causing the side effects Giddings was experiencing.  ECF 16-1, ¶ 9.  Mullins stated that the safest course of action would be to analyze lab work regarding Giddings' liver function before continuing or starting a new medication regimen.  ECF 16-4, at 18.  Giddings became combative again, and Mullins ended the visit prematurely and wrote another ticket.  *Id.*

3

On April 29, Dr. Glenroy Robinson evaluated Giddings for individual counseling, during which time Giddings appeared to be stable, although "tense" and "agitated." *Id.* at 41–42. Giddings denied any recent or current suicidal or homicidal ideations. *Id.*

On May 13, Mullins noted that the lab work results were in and a follow up visit with the psychiatrist was scheduled for May 16. *Id.* at 43. On May 16, Dr. Howard met with Giddings to review his labs and explained that, based on his mental status exam and his admission that he was "taking medication from another inmate" and "he d[id] not know what he was taking," Dr. Howard was unable to prescribe medications due to possible drug interactions. *Id.* at 45. Dr. Howard noted that Giddings was clinically stable at the time of the visit. *Id.*

Giddings alleges in his unverified complaint that when his psychiatric medication was discontinued, he began experiencing depression, irrational and homicidal thoughts that were "spiraling out of control," mood swings, and personality changes. ECF 1, at 2, 4. He claims he reported his symptoms to the Centurion Medical and Regional Directors but was ignored. *Id.* at 4. Giddings also alleges he informed Mullins, who "refused to do anything" and instead "falsified an incident report" against him. *Id.* In addition, he claims Robinson and Dr. Howard ignored him, which he asserts amounted to deliberate indifference. *Id.* at 5.

Around May 26, 2022, Giddings was transferred to JCI. *See* ECF 16-1, ¶ 13. On May 30, he requested a sick visit and was referred to a mental health care provider for follow-up. ECF 16-4, at 53. On June 6, JCI Psychiatrist Dr. Kirsten George evaluated Giddings and reinstated his Lithium prescription. *Id.* at 56–57. According to Giddings, the JCI psychiatrist said " there was no reason for [the Hagerstown psychiatrist] to take [you] off of your meds. . . . She was wrong to have taken you off it." ECF 1, at 5. Giddings claims that the psychiatrist's statement shows that his previous providers committed medical malpractice. *Id.* Dr. George insists that she "never

criticized or questioned the care rendered by Dr. Claudia Howard" or any other health care provider to Giddings. ECF 16-3, ¶ 2.

Giddings requested a competency hearing from the psychologist at JCI to support his assertion that he "was experiencing a mental health crisis at the time" Mullins filed the incident reports that he believes led to his transfer to JCI. ECF 1, at 5–6. Giddings alleges that the JCI psychologist told him that she did "not have the resources to determine [his] prior competency" and could not "say whether [he was] competent back then or not," because she was not at Hagerstown with him. *Id.* at 6. He alleges she then "falsified testimony" for the hearing and said he had been competent. *Id.* at 6. Giddings claims that, as a result of Mullins' report and the JCI psychologist's testimony, he lost his minimum classification status, vocational training credits, and good conduct credits. *Id.* at 6–7. He insists these deprivations amounted to a violation of his due process rights. *Id.* at 6–7.

## II. Standard of Review

The Centurion defendants moved to dismiss the complaint for failure to state a claim or alternatively for summary judgment. Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the Court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678)). But the claim does

not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ is the Answer Ministries, Inc. v. Balt. Cnty., Md.*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

When ruling on a Rule 12(b)(6) motion, the Court must accept the allegations as true and draw all reasonable inferences in favor of the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765, 777 (4th Cir. 2022). But the Court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 212 (4th Cir. 2019)). The Court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

"[P]ro se filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Accordingly, the Court must construe pro se pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 1376 (2021). But "liberal construction does not require [the Court] to attempt to 'discern the unexpressed intent of the plaintiff[;]'" the Court need only "determine the actual meaning of the words used in the complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)). Thus, a pro se complaint "still 'must contain enough

facts to state a claim for relief that is plausible on its face.'"  *Thomas v. The Salvation Army S. Territory*, 841 F.3d 632, at 637 (4th Cir. 2016) (quoting *King v. Rubenstein*, 825 F.3d 206, 212, 214 (4th Cir. 2016) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs.  *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c).  The Court also may consider judicially noticed facts and documents integral to and explicitly relied on in the complaint when their authenticity is not disputed.  *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015); Fed. R. Evid. 201(b). When the parties present and the Court considers matters outside the pleadings on a Rule 12(b)(6) motion, the Court must treat the motion as one for summary judgment under Rule 56, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

The Court notified Giddings that he had the right to respond to the Centurion defendants' motion, that the motion could be construed as one for summary judgment, and that if he did not file a timely and adequate written response, the Court could dismiss the case or enter judgment against him without providing him another opportunity to respond.  ECF 17.  Moreover, the Centurion defendants' motion, identifying summary judgment as possible relief, provided sufficient notice for Giddings to have a reasonable opportunity to present relevant evidence in support of his position.  *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260-61 (4th Cir. 1998).  Thus, the Court is satisfied that Giddings has been advised that the Centurion defendants' motion could be treated as one for summary judgment and that he has been given a reasonable opportunity to present materials in response to the motion.  The Court will resolve the motion under Rule 56.

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A). Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment. *Id.* at 251. The Court "should not weigh the evidence." *Perkins*, 936 F.3d at 205 (quoting *Anderson*, 477 U.S. at 249). However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," then summary judgment is proper. *Id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, this Court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

### III.  Analysis

#### A.  Deliberate Indifference

Giddings alleges that the defendants were deliberately indifferent to his serious medical need when they discontinued his Lithium prescription and would not reinstate it. ECF 1, at 5.

"The Eighth Amendment protects prisoners from 'unnecessary and wanton infliction of pain.'" *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)).  Under the Eight Amendment, the government must "provide medical care for those whom it is punishing by incarceration."  *Estelle*, 429 U.S. at 103.  Any "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment."  *Id*. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  To prevail on a claim based on the alleged denial of medical care, a plaintiff must establish that the defendants' actions or their failure to act amounted to "deliberate indifference to serious medical needs."  *See Estelle*, 429 U.S. at 106; *see also Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017).

The deliberate indifference standard has two prongs. The prisoner must show that "his medical condition was objectively serious—that is, 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'"  *Hixson v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021) (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)).  He also must demonstrate that the official subjectively knew of and disregarded an excessive risk to his health or safety.  *Id.*  "[I]t is not enough that an official *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction."  *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014).  An inmate can show subjective knowledge "through direct evidence of actual knowledge or through circumstantial evidence," such as evidence that "'the risk was obvious.'"  *Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

"Deliberate indifference is a very high standard." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999); *see also Jackson*, 775 F.3d at 178 (describing the applicable standard as an "exacting" one). "[T]he treatment given must be 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Hixson*, 1 F.4th at 303 (quoting *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990)). It requires "'more than mere negligence,' but 'less than acts or omissions [done] for the very purpose of causing harm or with knowledge that harm will result.'" *Id.* (quoting *Farmer*, 511 U.S. at 835). Deliberate indifference will not be found if "prison officials [who] are aware of a serious medical need . . . respond[ ] reasonably to the risk." *Id.* at 302 (quoting *Farmer*, 511 U.S. at 844). Thus, "'[d]isagreements between an inmate and a physician over the inmate's proper medical care' are not actionable absent exceptional circumstances." *Id.* at 302–03 (quoting *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985)).

Here, it is undisputed that Giddings had been diagnosed with bipolar disorder and previously had been prescribed Lithium. On April 11, 2022, after he complained about side effects, he was no longer prescribed Lithium. Giddings claims that the Centurion defendants were deliberately indifferent when they ignored his requests to reinstate his Lithium prescription. But there is no objective evidence that Giddings was suffering from a serious medical need when he met with medical providers and requested reinstatement of his Lithium prescription. The only evidence before the Court is a therapist report that, during an April 29, 2022 behavioral health visit, Giddings appeared stable, albeit "tense" and "agitated," and denied he had any recent or current suicidal or homicidal ideations. Thus, Giddings has not presented evidence that he had a serious medical need of which the defendants were aware.

Even if Giddings had a serious medical need, there is no evidence that the defendants responded inadequately. Dr. Howard discontinued Lithium because she believed the side effects of Lithium were detrimental to Giddings' health and eventually would cause "irreversible damage." While his medication was discontinued, he was seen by therapists and nurses when he expressed concerns about his mental health. He did not state during any of those visits that he was experiencing homicidal or suicidal ideations. And, the medical staff ordered bloodwork for four weeks after the medication was discontinued so that they could determine the best course of action. When Dr. Howard saw Giddings after the bloodwork came back, she did not prescribe any medication because Giddings admitted to her that he was taking "an unknown medication" that another inmate had given him and she determined there could have been adverse drug interactions. Less than one month later, on June 6, the JCI psychiatrist prescribed Giddings Lithium once again. In response to this medical record evidence, Giddings presents no counterevidence. His personal disagreement about the course of treatment is insufficient to establish a deliberate indifference claim.

On the record before the Court, there can be no dispute that the Centurion defendants were not deliberately indifferent to Giddings' serious medical need. Thus, the Centurion defendants are entitled to summary judgment on the deliberate indifference claim.[2]

**B. Due Process**

Giddings claims that he was denied due process when he was found guilty of the allegations Mullins made against him and, as punishment, his classification status was increased and his vocational training and good conduct credits were reduced. ECF 1, at 6–7. He believes this was

---

[2] To the extent Giddings raises state law claims of medical malpractice and negligence, the Court declines to exercise supplemental jurisdiction and dismisses those claims without prejudice. *See* 28 U.S.C. § 1367(c)(3).

11

a due process violation because Mullins' report was false and the JCI psychologist allegedly told him she could not determine his competence at the time of the incidents Mullins described, and then she provided "false testimony" that Giddings was competent at the time in question. *Id.*

The Fourteenth Amendment's Due Process Clause guarantees that no state shall "deprive any person of . . . liberty . . . without due process of law." U.S. Const. amend. XIV, § 1. To prevail on a due process claim, a plaintiff first must establish the existence of a property or liberty interest for which "procedural protections are due." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Then, the plaintiff must show the defendants deprived him of that interest without providing him with the protections he was due. *Id.* Imprisonment does not deprive a prisoner of a protected liberty interest unless it imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see Wilkinson v. Austin*, 545 U.S. 209, 222–24 (2005) (quoting *Sandin*). The comparison of the challenged conditions to "those [a prisoner] could expect to experience as an ordinary incident of prison life necessarily is fact specific," but "whether the conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination." *Beverati v. Smith*, 120 F.3d 500, 503 (4th Cir. 1997). "[E]ven when an institutional restriction impinges a specific constitutional guarantee, . . . the practice must be evaluated" with great deference to the prison administrators' decisions and with "the central objective of prison administration, safeguarding institutional security," in mind. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979).

"Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In prison disciplinary proceedings, when an inmate faces the possible loss of diminution credits, he is entitled to certain due process protections. *Id.* at 557, 558. These include:

(1) advance written notice of the charges against him; (2) a hearing where he is afforded the right to call witnesses and present evidence when doing so is not "unduly hazardous to institutional safety or correctional concerns"; (3) the opportunity to have assistance from another inmate if the inmate charged is illiterate or the disciplinary hearing involves complex issues; (4) an impartial decision-maker; and (5) a written statement of the "evidence relied on and reasons for the disciplinary action." *See id.* at 563–66, 570–71. There is no constitutional right to confront and cross-examine witnesses. *Id.* at 568–69.

The Centurion defendants are mental health providers who were not involved in the hearing or the decisions to reclassify Giddings and reduce his vocational training and good time credits. For that reason, they are entitled to summary judgment on the due process claim. Even if they had been involved in the disciplinary proceedings, Giddings has not alleged that he was denied any due process protections. Rather, it is undisputed that Giddings received notice of the ticket, was granted an opportunity to contest his competency, and was provided a hearing before the matter was adjudicated. He received the process that was due. The Centurion defendants are entitled to judgment as a matter of law on the due process claim.

### C. Remaining Defendants

The Court mailed a copy of the complaint to Centurion Health and directed its counsel to enter an appearance on behalf of any parties for whom service was accepted and to notify the Court of any defendants for whom service was not accepted. ECF 6. Centurion Health accepted service on behalf of Centurion Behavioral Health Staff, Dr. Howard, Dr. Kale, Dr. Butala, and Mullins. *See* ECF 16. None of the remaining defendants has been served.

Giddings has not plausibly alleged a deliberate indifference, due process or other constitutional claim against the Boards, the Centurion Medical Director, or the Centurion Regional

Director.  *See Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) (stating that under § 1983, a plaintiff must "affirmatively show[] that the official charged acted personally in the deprivation of the plaintiff's rights" to establish personal liability).  Therefore, his claims against the Boards, the Centurion Medical Director, and the Centurion Regional Director are dismissed without prejudice.  *See* 28 U.S.C. § 1915(e)(2), 1915A(b) (2018) (requiring a court to screen a complaint filed by a prisoner *in forma pauperis* and dismiss it if it fails to state a plausible claim for relief).  Because he does not a state a claim against the Boards, his motion for the Court to serve them is denied.

Additionally, Giddings names JCI Psychiatrist in his complaint, but he does not allege the JCI Psychiatrist failed to provide care.  ECF 1, at 5.  His claims against the JCI Psychiatrist also are dismissed without prejudice.  *See* 28 U.S.C. § 1915(e)(2), 1915A(b).

His claims against "Psychologist Robinson," JCI Psychology Staff, and JCI Psychologist/Therapist fare no better.  He has not alleged that any of these defendants was deliberately indifferent to his medical needs.  Insofar as he alleges that they were involved in what he believes was a denial of his due process rights, these defendants, like the Centurion defendants, are mental health providers who were not involved in the hearing or the decision to reduce his good time credits.  His claims against these defendants are dismissed without prejudice.  *See* 28 U.S.C. § 1915(e)(2), 1915A(b).

**IV.     Conclusion**

The Centurion defendants' motion, construed as a motion for summary judgment, is granted.  Giddings' motion to serve the Boards is denied, and his claims against the remaining defendants are dismissed without prejudice.  A separate order follows.

July 13, 2023
Date

Deborah L. Boardman
United States District Judge